Reversed and Remanded and Memorandum
Opinion filed February 15, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00941-CV



CenterPointe
Living @ Austin, L.P., Appellant 

v.

Morrell Masonry
Supply, Inc., Appellee 



On Appeal from
the County Civil Court at Law No. 3

Harris County, Texas

Trial Court
Cause No. 938,168



 

MEMORANDUM OPINION 

            Appellant
CenterPointe Living @ Austin, L.P., appeals the trial court’s grant of summary
judgment in favor of Morrell Masonry Supply, Inc., the plaintiff below.  We
reverse and remand.

I

            CenterPointe
owns property and buildings that comprise a residential construction project located
at 4403A, 4403B, 4405A, and 4405B, Austin Street, Houston.  One of CenterPointe’s
contractors on the property was Sanchez Stucco/Norma Sanchez.  CenterPointe
contracted with Sanchez to provide stucco work on the property for $10,000.  Sanchez
ordered the materials required for the stucco work from Morrell.  Sanchez did
at least some of the work, and CenterPointe paid Sanchez $7,000 of the $10,000
contract price, retaining $3,000.  But Sanchez did not pay Morrell for the
materials Morrell supplied. 

            In
February 2010, Morrell, through its attorney, sent CenterPointe notice that it
was making a claim for $7,964.34, representing unpaid invoices for the
materials Morrell supplied to Sanchez.  The notice also advised CenterPointe of
Morrell’s intent to file a mechanic’s lien on the property.  After CenterPointe
received this notice, it made no further payments to Sanchez.  In March,
Morrell filed an “Affidavit Claiming Mechanic’s and Materialman’s Lien” against
the property and sent CenterPointe notice of the filing and a copy of the
affidavit.

            In
April 2009, Morrell filed suit against CenterPointe, alleging claims including
(1) foreclosure of Morrell’s mechanic’s lien, (2) quantum meruit, and (3)
misapplication of construction trust funds.  Morrell sought damages of
$7,964.34, plus attorney’s fees, costs, and statutory interest until the amount
was paid in full.  CenterPointe answered with a general denial.

            In
June 2009, Morrell moved for summary judgment on the basis that it had
satisfied all the requirements for a valid lien against CenterPointe’s
property.  CenterPointe responded that its liability was limited to retainage of
$1,000 and any payments owed to Sanchez at the time it received Morrell’s
notice, which was zero.  On August 21, 2009, the trial court granted Morrell’s
motion.  In its judgment, the trial court awarded damages of $7,964.34 and
attorney’s fees of $3,720, and ordered foreclosure of the lien.  CenterPointe
moved for a new trial, which was overruled by operation of law.  This appeal
followed.




II

A

            We
review a traditional motion for summary judgment de novo, taking as true all
evidence favorable to the nonmovant, and indulging every reasonable inference
and resolving any doubts in the nonmovant’s favor.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  A traditional summary judgment
may be granted if the motion and summary-judgment evidence establish there is
no genuine issue of material fact and the moving party is entitled to judgment
as a matter of law.  Tex. R. Civ. P. 166a(c); Provident Life & Accident
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).

            All
issues to be considered by the trial court in determining the motion for
summary judgment must be presented in the motion or in an answer or other
response to the motion.  See Tex. R. Civ. P. 166a(c); McConnell v.
Southside Indep. Sch. Dist., 858 S.W.2d 337, 340, 343 (Tex. 1993).  A
summary judgment cannot be affirmed on grounds not expressly set out in the
motion or response.  Stiles v. Resolution Trust Corp., 867 S.W.2d 24, 26
(Tex. 1993).

B

            Under
the mechanic’s and materialman’s lien statutes, there are two sources of funds
to which a derivative claimant may look for recovery from an owner.  Tex. Prop.
Code §§ 53.001–.260; Stolz v. Honeycutt, 42 S.W.3d 305, 310 (Tex.
App.—Houston [14th Dist.] 2001, no pet.); Hadnot v. Wenco Dist., 961
S.W.2d 232, 234 (Tex. App.—Houston [1st Dist.] 1997, no writ) (citing First
Nat’l Bank v. Sledge, 653 S.W.2d 283, 286 (Tex. 1983).  The first source is
the retainage statute, which requires an owner to retain ten percent of the
contract price of the work until thirty days after the work is completed.  See
Tex. Prop. Code § 53.101; Stolz, 42 S.W.3d at 310.  If the owner does
not comply with this subchapter, claimants who comply with the statutory
requirements have a lien, at least to the extent of the amount that should have
been retained from the original contract under which they are complaining,
against the property.  See id. § 53.105(a); Stolz, 42 S.W.2d at
310–11; Hadnot, 961 S.W.2d at 234.  

            The
other source of funds is the fund-trapping statute, which enables a claimant to
trap, in the owner’s hands, funds payable to the general contractor if the
owner receives notice from the claimants that they are not being paid.  See
Tex. Prop. Code § 53.081; Hadnot, 961 S.W.2d at 235.  If the owner pays
any money to the general contractor after receiving notice from the claimants,
the owner’s property will be subject to a lien to the extent of the money
paid.  See Tex. Prop. Code § 53.084; Stolz, 42 S.W.3d at 311; Hadnot,
961 S.W.2d at 235.  The amount trapped may exceed the ten percent required to
be retained under the retainage statute.  Hadnot, 961 S.W.2d at 325.

            In
its motion for summary judgment, Morrell asserted that it had proved it
satisfied all of the requirements to have a valid lien against CenterPointe’s
property as a matter of law.  Specifically, Morrell asserted that it was a
person entitled to a lien, it followed the proper notice requirements, it filed
its lien timely, its affidavit had the required contents, and it had sent the
required copies of the lien to CenterPointe.  In support of its claim, Morrell
attached copies of its lien, notices to CenterPointe, and supporting affidavit,
as well as copies of signed delivery tickets, an affidavit of Morrell’s office
manager attesting that the unpaid balance Sanchez owed was $7,964.34, and an
attorney’s-fees affidavit.

            In
response, CenterPointe contended that, among other things, its liability was
limited to the $1,000 retainage of its ten-thousand-dollar contract with
Sanchez and “any payments owed to [Sanchez] at the time of receipt of the
trapping notice on February 10, 2009, which was zero.”  See First
Nat’l Bank v. Sledge, 653 S.W.2d 283, 286 (Tex. 1983) (the amount to be
trapped may exceed the ten percent required to be retained).  In support of its
contention, CenterPointe provided the affidavit of its president, James Guillory. 
In his affidavit, Guillory averred that CenterPointe had paid Sanchez $7,000 of
the contract price of $10,000, and at the time CenterPointe received Morrell’s
fund-trapping notice, it owed no money to Sanchez.  Guillory also averred that CenterPointe
was withholding $3,000 of the contract amount because Sanchez had “stopped
working on the project . . . and did not finish the work required under their
contract.”  Consequently, he stated, “no additional monies are owed to
[Sanchez] for work on the project” and CenterPointe was required to hire
another contractor to finish Sanchez’s work.  Guillory also averred that
Centerpoint had made no further payments to Sanchez since receiving Morrell’s
fund-trapping notice.

            Thus,
CenterPointe, through Guillory’s affidavit, raised a fact issue on Morrell’s
summary-judgment assertion that it was entitled to the full amount of the
damages claimed.[1] 
See Sledge, 653 S.W.2d at 286; see also Ambassador Dev.
Corp. v. Valdez, 791 S.W.2d 612, 622 (Tex. App.—Fort Worth 1990, no writ)
(stating the maximum amount of a lien which may be claimed is equal to the
amount required to be retained under the statutory-retainage method plus any
trapped amounts that were paid to the contractor after receiving statutory notice);
McKalip v. Smith Bldg. & Masonry Supply, Inc., 599 S.W.2d 884, 887
(Tex. Civ. App.—Waco 1980, writ ref’d n.r.e.) (under predecessor statute,
stating the maximum amount of lien that materialman can claim is the ten-percent
retainage plus any additional amount the materialman might be entitled to that
was paid out to the contractor after the owner received statutory notice and
warning to retain funds owing to the contractor).  We therefore conclude that the
trial court erred in granting summary judgment to Morrell.  Further, because
Morrell was not entitled to summary judgment, the trial court erred in awarding
attorney’s fees to Morrell.[2] 
We therefore sustain CenterPointe’s issue and reverse the trial court’s
judgment.[3]

*
* *

            We
reverse the trial court’s judgment and remand the case to the trial court for
further proceedings consistent with this opinion.

 

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Frost, and Brown.









[1]
In its appellate brief, Morrell argues the following:  (1) CenterPointe acted
as a general contractor as well as the owner and therefore “is chargeable as
such”; (2) because CenterPointe is both the owner and general contractor on a
“$2 million +, new townhome construction project,” it was required to retain
ten percent of the cost of the entire project—at least $200,000—and not merely
$1,000; (3) CenterPointe is improperly attempting to limit Morrell’s recovery
to $1,000 when Sanchez’s contract was for “labor only” and Morrell provided the
materials to the project; (4) Sanchez substantially completed the work; and (5)
CenterPointe did not respond to Morrell’s claim and therefore is “considered to
have assented” to the full amount of the demand.  To support these arguments,
Morrell filed a motion requesting that we take judicial notice of certain
Harris County property records.  We have denied this motion, and we do not
address Morrell’s arguments as they were not raised in the summary-judgment
briefing below.  See Tex. R. Civ. P. 166a(c); McConnell, 858
S.W.2d at 343; Stiles, 867 S.W.2d at 26. 





[2]
In its appellate brief, CenterPointe prays that we render judgment in its favor
and hold that its liability to Morrell is limited to $1,000; alternatively, it
requests a remand.  But CenterPointe did not request affirmative relief below;
it merely requested that the trial court deny Morrell’s motion for summary
judgment.  Accordingly, we do not consider CenterPointe’s request for
affirmative relief and instead reverse and remand the case.





[3] 
CenterPointe also complains that Morrell provided no summary-judgment evidence
to support its claims of quantum meruit and misapplication of construction
trust funds.  Yet, the trial court’s “Final Summary Judgment” recites that it
is “final, disposes of all claims and all parties, and is appealable.”  See
Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 2001) (a judgment is
final if it disposes of all parties and all claims).  Morrell responds that it
did not move for summary judgment on those claims.  In reversing the trial
court’s judgment, we remand the entire case, including the quantum meruit and
misapplication of construction trust funds claims, for further proceedings.  See
id. at 202, 205–06.